UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 14-CR-0239-FM |
| FRANK OCHOA | § § § | |

**MOTION TO EXCLUDE HISTORICAL CELL SITE EVIDENCE, OR IN THE ALTERNATIVE, COMPEL DISCLOSURE AND REQUEST *DAUBERT* HEARING**

TO THE HONORABLE FRANK MONTALVO, DISTRICT JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

COMES NOW Defendant FRANK OCHOA, by and through counsel, and files this Motion to Exclude Historical Cell Site Evidence, or in the Alternative, Compel Disclosure and Request *Daubert* Hearing prior to the trial set in this cause for July 5, 2016.  Mr. Ochoa respectfully shows as follows:

## I.     RELEVANT FACTUAL BACKGROUND

A fire alarm went off at Austin Foam Plastics in El Paso on January 29, 2011, at 1:59 p.m., and the fire caused some damage to that business.  Investigators suspected Mr. Ochoa of setting the fire and interrogated him on March 22, 2011.  During that interrogation, Mr. Ochoa described his whereabouts on January 29, 2011.  Mr. Ochoa said that he entered the United States from Juarez on the morning of January 29, went to a church in Socorro, Texas, and then to his cousin Celestina Montillo's house on Forsa in Socorro, Texas.  (ECF No. 55-1 at 43-50-51.)  He also explained that he called his supervisor Irma Sandoval that morning from his Montillo's house using his either Montillo's phone or her son's.  (ECF No. 55-1 at 46-49.)

According to a summary provided by the Government in discovery ATF Special Agent Johnson received historical cell site and sector information on June 8, 2011, for two different cell phones, both billed to Montillo.  T-Mobile also provided a list of cell site locations and a guide on how to look up the cell site locations using the cell phone records.  Mr. Ochoa requested this information in a discovery letter dated March 30, 2016.  To date, he has not received a response from the Government regarding this specific request or the relevant information.  He has received the call history information for the phones (history of outgoing and incoming calls), but not the historical cell site and sector information, the list of cell site (tower) locations, or the guide.

According to the Government's summary and the call history information, the following calls occurred with Montillo's phone on January 29, 2011:[1]

- At 10:57 a.m., the cell phone made an outgoing call to Irma Sandoval that lasted approximately 30 minutes.  That call pinged off a cell site located on 201 Tanton Road, El Paso, Texas, 0.64 miles from Montillo's home and the church.

- At 12:26 p.m., the cell phone made an outgoing call that pinged first off a tower located at 2020 N. Zaragoza Road, El Paso, 11.62 miles from Montillo's home and 3.45 miles from Austin Foam Plastics.  It then pinged off a tower located at 12400 Montana Avenue, El Paso, 11.62 miles from Montillo's house and 5.69 miles from Austin Foam Plastics.

- At 12:40 p.m. and 1:53 p.m., the cell phone made an outgoing call that pinged off a tower at 2020 N. Zaragoza Road.

---

[1] Approximate distances were obtained using Google Earth as the crow flies, a direct line between the locations.  Mr. Ochoa does not attest to the accuracy of the cell tower information because he has not been provided the raw data.

- At 2:34 p.m., the cell phone made an outgoing call; at the end of the call, it pinged off a tower located at 13168 Fordham, 3.74 miles from Montillo's house and 6.68 miles from Austin Foam Plastics.

- At 2:39 p.m., the cell phone made an outgoing call that pinged off a tower located at 10521 Alameda Avenue, Socorro, 1.72 miles from Montillo's house and 6.76 miles from Austin Foam Plastics.

- At 2:44 p.m. and 2:49 p.m., the cell phone received two incoming calls that pinged off a tower located at 201 Tanton Road, 0.64 miles from Montillo's home.

- At 3:07 p.m., the cell phone made an outgoing call that pinged off a tower located at 550 Lisa Diane Road, 1.82 miles from Montillo's home.

According to the Government's summary and the call history information, the following calls occurred with phone identified as Montillo's son's phone on January 29, 2011:

- At 1:54 p.m., the cell phone received a call that pinged off a tower located at 2558 Joe Battle Boulevard, El Paso, 10.27 miles from Montillo's home and 4.09 miles from Austin Foam Plastics.

- At 2:06 p.m., the cell phone made an outgoing call that pinged off a tower located at 2558 Joe Battle Boulevard at the beginning of the call, and off a tower located at 2020 N. Zaragoza at the end of the call, 11.62 miles from Montillo's home and 3.45 miles from Austin Foam Plastics.

- At 2:49 p.m., the cell phone made an outgoing call that pinged off a tower located at 201 Tanton Road, 0.64 miles from Montillo's home.

## II.    ARGUMENT

Mr. Ochoa moves to exclude any introduction of the historical cell site information on numerous grounds.  Alternatively, Mr. Ochoa requests the historical cell site information and expert notice pursuant to Rule 16.  He also requests a *Daubert* hearing to allow the Court to perform its gatekeeping function.

### A.    The Historical Cell Site Information Should be Excluded as Irrelevant and More Confusing than Probative

The cell phones in question do not belong to Mr. Ochoa.  He said he used one of them on January 29, 2011, to make a call which appears to have been placed approximately three hours before the fire alarm went off at Austin Foam Plastics.  During the hour preceding the fire alarm, Montillo's phone pinged off a tower located at 2020 N. Zaragoza Road (11.62 miles from Montillo's home and 3.45 miles from Austin Foam Plastics), and her son's phone pinged off a tower located at 2558 Joe Battle Boulevard (10.27 miles from Montillo's home and 4.09 miles from Austin Foam Plastics).  During the hour after the fire alarm, Montillo's phone pinged off towers located at 13168 Fordham (3.74 miles from Montillo's house and 6.68 miles from Austin Foam Plastics), 10521 Alameda Avenue, (1.72 miles from Montillo's house and 6.76 miles from Austin Foam Plastics), and 201 Tanton Road (less than a mile from Montillo's home), and her son's phone pinged off of towers located at 2558 Joe Battle, 2020 N. Zaragoza, and 201 Tanton Road.

Federal Rule of Evidence 402 limits admissible evidence to that which is relevant, defined in Federal Rule of Evidence 401 as making a fact in consequence more probable than not.  The historical cell site information is not relevant.  The location of the cell tower that received a signal from either Montillo's phone or her son's does not provide any information as to whether Mr. Ochoa was the person using that phone.  Nor does it provide exact information provided about the

cell phone's location, as more fully described *infra*.  And the closest a cell site location for the phones to Austin Foam Plastics was 2020 N. Zaragoza, four miles away and near Montwood High School, numerous restaurants, and a shopping district including large box stores such as Walmart, Target, Home Depot, Hobby Lobby, and Pet Smart.  This historical cell site information is simply unhelpful to proving a material fact.  It also will likely confuse the jury, as it will require testimony of how cell phones ping off of towers, the location of the towers, and the conclusions that can, or cannot, be drawn from that information.  Thus, it should also be excluded under Federal Rule of Evidence 403 as well.

### B.  The Court Should Exclude the Historical Cell Site Evidence as a Sanction for Violating the Court's Discovery Order and Rule 16

Additionally, the Court should exclude the historical cell site evidence as a discovery violation.  The Court entered a Standing Discovery Order on March 19, 2014, that ordered the Government to provide to Mr. Ochoa any documents or tangible objects in the possession of the Government and either material to the preparation of Mr. Ochoa's defense or intended for use by the Government as evidence in chief at the trial.  (ECF No. 13 at 2.)  The Order also required production of a written summary of the expert testimony it intends to use, including the witnesses' qualifications.  (*Id.* at 3.)  This discovery was due 15 days after Mr. Ochoa's arraignment, on April 2, 2014—more than two years ago.  *See* (*id.* at 2); (ECF Nos. 11, 12).  Mr. Ochoa also requested this information, as well as expert notice, in his discovery letter dated March 30, 2016.  According to the Government's summary, it has had the historical sell site and sector information, a list of cell site locations, and a guide on how to look up the cell site locations using the cell phone records since June 8, 2011.  The proper sanction for the Government's failure to provide this information to Mr. Ochoa is for it to be excluded.  *See* FED. R. CRIM. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court may . . . prohibit that party from introducing the undisclosed evidence[.]").

### C.  The Court Should Exclude Lay Witness Testimony of Historical Cell Site Information

If the Court determines the historical cell site information is relevant, passes Rule 403, and should not be excluded as a discovery violation, Mr. Ochoa objects to its introduction through a lay witness.

Lay witness opinion testimony is limited to an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  If the opinion testimony is based on scientific, technical, or other specialized knowledge, then a "witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion" provided that the testimony meets the requirements in Rule 702.  FED. R. EVID. 702.

"'[T]the distinction between lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"  *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting FED. R. EVID. 701, Advisory Committee Notes to 2000 Amendments (internal quotation marks omitted)).  "*[A]ny* part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701."  *Id.* (internal quotation marks omitted).  The court serves as the gatekeeper for expert testimony to ensure that it is reliable and relevant.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1993).

While a lay witness could introduce the raw data of the towers pinged by the cell phones and the towers' locations, testimony regarding the implication of that ping to the location of the cell phone would be expert testimony because it would be based on scientific, technical, or other

specialized knowledge that is within the scope of Federal Rule of Evidence 702.  *See* FED. R. EVID.

701(c).

Testimony "concerning how cell phone towers operate constitute[s] expert testimony

because it involve[s] specialized knowledge not readily accessible to any ordinary person." *United*

*States v. Yeley–Davis*, 632 F.3d 673, 684 (10th Cir. 2011) (finding district court failed to make

specific findings to support the admission of contested expert testimony); *see also United States*

*v. Hill*, 818 F.3d 289, 296 (7th Cir. 2016).[2]  "While cellphones are designed to connect to the tower

with the strongest signal, that tower might not actually be the closest because factors such as

weather, obstructions, and network traffic can cause a call to connect to a tower farther away."

*United States v. Reynolds*, 626 F. App'x 610, 615 (6th Cir. 2015) (unpublished).

> A district court explained:
>
> The experts agree on the majority of the following, with minor variations: . . . When a user places a call or sends a text message from a cell phone, the phone communicates with the cell network's mobile switching statement, which routes the phone to a cell tower.  Tower selection depends upon factors such as proximity of the phone to the tower, whether terrain and buildings obstruct the connection, and call volume at a particular tower.

*United States v. Eady*, No. 2:12-CR-00415-DCN-3, 2013 WL 4680527, at *3 (D.S.C. Aug. 30,

2013) (unpublished).[3]  The expert witness in *Eady* opined that a cell phone does not always connect

to the nearest cell tower but rather "to the most attractive tower."  *Id.* at 3 n.4 (internal quotation

---

[2] The Fourth Circuit found that Sprint employees' testimony regarding "how cell phones connect with cell sites and the operations and radio frequency range of cell sites" and the factors that affect the ability of a phone to connect to a particular tower was lay opinion testimony, or at least the error of admitting it as such was not harmful.  *United States v. Graham*, 796 F.3d 332, 364 (4th Cir. 2015).  It was more concerned, though with testimony about "technical details about operations performed by cell sites and how calls are routed through network switches," as that was clearly expert testimony.  *Id.* at 365 (finding the error was ultimately harmless).

[3] Mr. Ochoa cites to decisions, both published and unpublished, from other districts and circuits due to the lack of Fifth Circuit precedent and other published decisions.

marks omitted).  What makes a certain tower attractive depends on a variety of factors.  *Id.*  The interpretation of these factors as they relate to determining a cell phone's general location at specific times necessitates specialized training and knowledge in the area of radio frequency and the Sprint switch and cell tower network.  *See United States v. Fama*, No. 12-CR-186-WFK, 2012 WL 6102700, at *4 (E.D.N.Y. Dec. 10, 2012) (unpublished) (admitting expert testimony and recognizing it can be tested based on factors impacting communication between a cell phone and a cell tower).  Indeed, the Seventh Circuit noted its concern "that the jury may overestimate the quality of the information" provided by historical cell site analysis and "caution[ed] the government not to present historical cell-site evidence without clearly indicating the level of precision—or imprecision—with which that particular evidence pinpoints a person's location at a given time."  *United States v. Hill*, 818 F.3d 289, 299 (7th Cir. 2016) (finding expert's testimony made the jury "aware not only of the technique's potential pitfalls, but also of the relative imprecision of the information he gleaned from employing it in this case").

Indeed many courts have admitted testimony regarding an approximate cell phone location through a properly qualified expert.  *See, e.g.*, *United States v. Schaffer*, 439 F. App'x 344, 347 (5th Cir. 2011) (unpublished) (finding no error to admit agent's testimony *as an expert* regarding historical cell site analysis); *Hill*, 818 F.3d at 295-99 (finding district court did not abuse discretion by admitting expert testimony); *United States v. Jones*, 918 F. Supp. 2d 1, 5-6 (D.D.C. 2013) (allowing agent to testify as expert since opinions in reports were "the product of reliable principles and methods");[4] *United States v. Pembrook*, 119 F. Supp. 3d 577,  (E.D. Mich. 2015) (allowing

---

[4] "Agent Eicher's reports demonstrate that he has reliably applied that methodology to the facts of this case, and thus his proffered testimony meets the reliability standards required under Rule 702 and *Daubert*." *United States v. Jones*, 918 F. Supp. 2d 1, 5-6 (D.D.C. 2013).

expert testimony that cell phones were in a general geographic region) ; *United States v. Davis*, No. 11-60285-CR, 2013 WL 2156659 (S.D. Fla. May 17, 2013) (unpublished) (finding expert testimony regarding cell phone location admissible after *Daubert* hearing); *United States v. Fama*, No. 12-CR-186-WFK, 2012 WL 6102700, *3 (E.D.N.Y. Dec. 10, 2012) (unpublished) (allowing expert testimony regarding historical cell site analysis); *United States v. Allums*, No. 08-cr-30, 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009) (unpublished) (same).  The admission of such testimony through qualified experts suggests that the opinion testimony regarding cell phone location results from the application of methodology and process of which an average person has no knowledge.

In *United States v. Beilharz*, an arson investigator testified as to a graphical representation he created of the cell towers in the defendant's call records.  Nos. 1:11cv1222 (LMB), 1:09cr105 (LMB), 2012 WL 2153157, at *5 (E.D. Va. June 12, 2012) (unpublished); *see Graham*, 796 F.3d at 365-66 (affirming admission of maps of calls plotted through the cell sites through a lay witness).  He did not testify as to "the technical aspects of cell phone operation," such as how the switch or cell tower indicates the defendant's location, "but merely how he compiled the summary chart."  *Id.*  While reading cell site records with a key is not complicated once the methodology for reading them is explained, any opinion as to what the switch and cell tower mean in relation to a cell phone's location requires a reasoning process based on technical and specialized knowledge regarding how cell phones transmit signals, how switches and cell towers relay those signals and calls, and why a cell tower might receive a signal.  The Government would be using this information to convict Mr. Ochoa of an offense with a minimum mandatory sentence of five years.  *See* 18 U.S.C. § 844(i).  It should not be allowed to cut evidentiary corners based on the faulty

assumption that the cell phones relay off of the closest cell towers and that such faulty knowledge is common to the average person.

Lastly, only with a properly qualified expert to testify as to his or her opinions regarding the location of the cell phones can Mr. Ochoa properly test on cross examination the reliability and the weight to be afforded such testimony. *See, e.g.*, *Hill*, 818 F.3d at 299 (explaining how expert's testimony was tested during cross-examination); *United States v. Fama*, No. 12-CR-186-WFK, 2012 WL 6102700, at \*4 (E.D.N.Y. Dec. 10, 2012) (unpublished) (noting that the "variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower" go to the weight of the expert witness's testimony). Mr. Ochoa must have the opportunity to challenge the reliability and weight placed on a switch or cell tower location in determining his cell phone location. *Cf. Florida v. Harris*, 133 S. Ct. 1050, 1057-58 (2013) (requiring a defendant to have the opportunity to challenge the reliability of a canine alert as basis of probable cause).

In *Harris*, the Supreme Court noted numerous factors that could call into question the reliability of a canine alert: "the adequacy of a certification or training program, . . . how the dog (or handler) performed in the assessments made in those settings . . . , evidence of the dog's (or handler's) history in the field, [and] . . . circumstances surrounding a particular alert." *Id.* Similar factors could alter the proximity of a cell tower to a cell phone such as call volume, physical obstructions, and tower maintenance. *See Eady*, 2013 WL 4680527, at \*3. If a defendant has an opportunity to test the reliability of a canine alert in a probable cause hearing, he should have the opportunity to test the reliability of the opinion that phone call relays from certain switches and cell phone towers represent a cell phone's location, particularly when it is being used to deprive him of his liberty for at least five years. A lay witness who lacks the scientific or technical

expertise to explain *why* a cell phone call relays off a certain cell tower would be unable to respond to such questions, depriving Mr. Ochoa of a fair trial.

> ### D.  If the Court Does Not Exclude the Historical Cell Site Evidence, It Should Compel the Government to Provide Mr. Ochoa the Relevant Discovery and Expert Notice, and Set a *Daubert* Hearing

The Court should order the Government to provide Mr. Ochoa the historical cell site evidence promptly.  This disclosure would include not only the information provided by T-Mobile but also the expert witness notice required by the Court's Standing Discovery Order and Rule 16(a)(1)(G).

Since the Government has not disclosed the identity of an expert witness for the historical cell site information, the witness's qualifications, or summarized the witness's opinions and bases for those opinions, Mr. Ochoa cannot properly prepare her defense or test those theories for admissibility under Rule 702 and *Daubert*.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that federal trial courts, when faced with a proffer of expert scientific testimony, must determine at the outset whether the "reasoning or methodology underlying the testimony is scientifically valid . . . ."  509 U.S. 579, 592-93 (1993).  As the Court recognized, in a case involving scientific evidence, evidentiary reliability will be based upon scientific validity. *Id.* at 590 n.9.  This standard applies both to "novel scientific techniques" and to "well established propositions."  *Id.* at 592 n.11.

Rule 702 was amended to incorporate the principles articulated in *Daubert*.  *See* FED. R. EVID. 702, Advisory Committee Notes (2000).  Under *Daubert* and Rule 702, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the testimony is relevant to a fact in issue; and (3) the testimony is reliable in that it "is based on sufficient facts or data" and the "product of reliable principles and methods."  FED. R. EVID. 702; *see Watkins v.*

*Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). The trial court is charged with making this preliminary determination under Federal Rule of Evidence 104(a). *See* FED. R. EVID. 702, Advisory Committee Notes (2000).

The historical cell site information of Montillo's cell phones on January 29, 2011, will fail Rule 702 because it is not relevant to a fact in issue for the reasons explained above.  Mr. Ochoa cannot address the other requirements of Rule 702 without first receiving expert notice from the Government.  Nevertheless, he files the instant Motion to alert the Court and the Government as to his concern that any expert testimony regarding the historical cell site information will not be admissible under Rule 702 and to request a *Daubert* hearing to determine its admissibility prior to trial.

## III.    CONCLUSION

WHEREFORE, Mr. Ochoa requests that the Court grant the requested relief of excluding the historical cell site evidence or, in the alternative, compelling the Government to disclose the evidence and setting a *Daubert* hearing prior to trial.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender


/S/
ANDREW STEED
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2016, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA Richard D. Watts, Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.


/S/
ANDREW STEED
*Attorney for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | NO. 14-CR-0239-FM |
| | § | |
| FRANK OCHOA | § | |
| | § | |

**O R D E R**

On this date, the Court considered Defendant's Motion to Exclude Historical Cell Site Evidence, or in the Alternative, Compel Disclosure and Request *Daubert* Hearing.  The Court having considered the premises, is of the opinion that the same should be and is hereby GRANTED.

It is therefore ORDERED that historical cell site evidence be EXCLUDED from the trial of the above-captioned cause.

SO ORDERED on this the_____day of June, 2016.

_____

FRANK MONTALVO
United States District Judge